**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SAMANTHA VASICH, RASHAUNDA )
DOOLEY, ANGELA MINNICK, JANIECE )
THEEKE, KATRINA BASIC, and JESSICA )
EVANS, individually and as the representatives )
of all other similarly-situated persons, and )
KIMBERLY BAILEY, HAYLEY STAFEN, )
and JENNIFER ROCCASALVA as individuals )
                                                 )
     Plaintiffs, )
                                                 )    No. 11 C 04843
     v.                               )
                                                 )    Judge John J. Tharp, Jr.
CITY OF CHICAGO, )
                                                 )
     Defendant. )

## MEMORANDUM OPINION AND ORDER

Pending before the Court are defendant City of Chicago's motions (1) for partial summary judgment seeking to narrow the class period and to dismiss for lack of standing the plaintiffs' request for mandatory prospective injunctive relief; and (2) to dismiss the intentional discrimination claims from the plaintiffs' Third Amended Complaint. For the reasons that follow, the Court grants the summary-judgment motion as to the class period and denies it as to the request for an injunction. The motion to dismiss is denied.

### Background

This putative class action alleges sex discrimination by the City of Chicago. The plaintiffs allege that the Physical Abilities Test formerly administered to firefighter/EMT candidates discriminated against female applicants in violation of Title VII of the Civil Rights Act of 1964. The plaintiffs are Samantha Vasich, Rashuanda Dooley, Angela Minnick, Janiece Theeke, Katrina Basic, and Jessica Evans (as of October 16, 2012), on behalf of themselves and

others similarly situated, and Kimberly Bailey, Hayley Stafen, and Jennifer Roccasalva (joined as of October 23, 2012) individually. The Court refers to them collectively as the "plaintiffs."

The plaintiffs' two-count Second Amended Complaint[1] and Third Amended Complaint allege both disparate impact upon and disparate treatment of female firefighter applicants. The plaintiffs wish to certify a class of women applicants who took and failed the firefighter/EMT PAT at any time from September 11, 2007, to the present. (As we will see, the basis for this date is somewhat mysterious.) They seek a declaratory judgment that that the City unlawfully discriminated against female firefighter-EMT applicants and an injunction prohibiting the continuation of the discriminatory practices and ordering the City to "adopt a valid, non-discriminatory method for determining whether firefighter/EMT candidates are physically capable of performing the job." As damages, they seek back pay and benefits, as well as their costs and attorney's fees. They further request an order requiring the City to hire them and award them retroactive seniority and benefits, or alternatively, requiring the City to pay them front pay and benefits without hiring them.

## I.    Motion for Partial Summary Judgment

The City's motion for partial summary judgment seeks to (1) limit the class period to events occurring on or after June 27, 2009—300 days (roughly) before named plaintiff Vasich filed an EEOC charge making allegations of class-wide discrimination; and (2) strike the plaintiffs' request for a mandatory injunction requiring the City to develop a new, non-

---

[1] The Complaint was amended with leave of court after the summary-judgment motion was filed and briefed; however, the amendment (adding a new plaintiff) has no bearing on the substantive claims or the arguments raised in the motion. The Third Amended Complaint (part of which the defendants moved to dismiss and therefore have not yet answered in full) is now the only operative pleading. *See French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009). For consistency between this opinion and the parties' submissions, the Court cites the paragraphs of the Second Amended Complaint in addressing the summary-judgment motion, but its rulings apply substantively to the parallel allegations and claims in the operative complaint.

discriminatory physical evaluation for firefighter-EMT candidates. As to the first part of the motion, the City contends that the various administrative charges filed before Vasich's did not allege class-wide discrimination based on the use of the PAT in hiring Firefighter-EMTs; the plaintiffs, on the other hand, argue that the "pre-Vasich charges" and ensuing investigation gave notice of class-wide claims. In the second part of its motion, the City argues that these plaintiffs lack standing to obtain mandatory injunctive relief because there is no immediate threat of a concrete injury. The plaintiffs contend that their standing is evident in light of their intention to seek employment as Firefighter-EMTs in the future.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). In assessing the City's motion, the Court construes the facts and makes all reasonable inferences in favor of the plaintiffs. *Jajeh*, 678 F.3d at 566.

## Facts[2]

The Chicago Fire Department required all Firefighter-EMT applicants to take and pass the PAT to proceed to the further stages of the hiring process. IT administered the PAT to applicants three times between December 2007 and March 2009. From April to October of 2008, at least five administrative charges of sex discrimination were filed by unsuccessful female applicants. The charges were as follows:

- On April 10, 2008, Jessica Evans filed a charge of sex discrimination with the EEOC. Her charge states that she applied to become a Firefighter-EMT in March

---

[2] The Court considers only those facts properly submitted and supported with citations to admissible evidence. Accordingly, the Court disregards any facts in the plaintiffs' statement of additional material facts that rely exclusively on the hearsay testimony of their attorney Teresa Demchek. *See* Local Rule 56.1(b)(3)(C).

2006, took the PAT in December 2007, and was told in January 2008 that she would not be considered for the position. She further stated: "I believe that I was discriminated against because of my sex, female."

- On July 7, 2008, Plaintiff Bailey, already a Chicago paramedic, filed an EEOC charge of sex discrimination stating that she "did not pass the Firefighter/EMT Physical Abilities Test." She further stated: "I believe that I have been discriminated against on the basis of my sex, female."

- On July 7, 2008, Plaintiff Theeke, already a Chicago paramedic, filed an EEOC charge of sex discrimination stating that she was not selected for the position of Firefighter-EMT and asserting: "I believe that I have been discriminated against because of my sex, female." The charge does not mention the PAT.

- On August 6, 2008, Plaintiff Stafen, already a Chicago paramedic, filed a charge of sex discrimination with the EEOC. Her charge states: "I applied for the position of Firefighter/EMT. In or around January 2008, I learned I was not selected. I believe I have been discriminated against because of my sex, female." The charge does not mention the PAT.

- On October 8, 2008, Plaintiff Minnick, already a Chicago paramedic, filed a charge of sex discrimination alleging that she was not promoted to Firefight-EMT. Her charge states: "I believe that I have been discriminated against because of my sex." The charge does not mention the PAT. However the EEOC's Intake Questionnaire reflects that Minnick reported: "[I] didn't pass test" and "[I] don't know what standards were or why I failed." She listed three other women "in the

same situation," including plaintiffs Stafen and Theeke, but did not answer the question who was treated worse, better, or the same as she.

Then on April 20, 2010 (a year-and-a-half after Minnick's charge), named plaintiff Vasich filed a charge that expressly included allegations of class-wide discrimination, specifically based on the use of the PAT to exclude otherwise qualified female applicants. Vasich brought her charge on behalf of "female firefighter candidates who have been and will in the future be removed from the [Chicago Fire Department] eligibility list and refused hire based on the (alleged) results of physical abilities test." On October 1, 2010, Jennifer Roccasalva (newly joined as a plaintiff in this case) filed a charge that also challenged the fairness of the PAT; she alleged that she "did not fail" the PAT "despite the City's assertion" to the contrary.

The EEOC investigated all the charges and sought discovery from the City at various times. On July 3, 2008, in connection with Evans' charge (the only one filed at that time) the agency asked the City to provide information "by gender/sex" for "all individuals" selected and not selected as Firefighter-EMTs after January 1, 2006.[3] The EEOC did not request any information relating to the PAT. The City provided the requested information in August 2008. At some point thereafter, the EEOC consolidated its investigation of the Evans charge with the other 2008 charges (by Bailey, Stefen, Theeke, and Minnick). In connection with all five charges, it issued a subpoena on March 25, 2010, for data about the PAT scores for "all individuals" who applied for Firefighter-EMT jobs and breaking down those selected and not selected by their scores and gender.

---

[3] Emphasizing the words "all individuals," the plaintiffs repeatedly characterize this and later requests as "class-wide discovery" by the EEOC. The City disputes this characterization of the requests for hiring statistics.

5

Later, the five 2008 charges under investigation were consolidated with three more charges, including Vasich's April 2010 charge. On December 29, 2010, the EEOC subpoenaed records from the City about its physical ability requirements for Firefighter-EMTs and its use and administration of the PAT to applicants for that job. About a year after filing her EEOC charge, Vasich requested and received a right-to-sue notice. The instant lawsuit was filed on July 19, 2011.

All of the named plaintiffs intend to seek positions as Chicago Firefighter-EMTs in the future. The City stopped using the PAT in 2011 and has no plans to use the PAT for future hiring. It has not implemented a new test, but it intends to. The City issued a Task Order Proposal Request on April 30, 2012, to find a vendor to "conduct a search for an alternative physical ability test." It has received proposals from two vendors, but it had not selected a vendor as of the time the instant motion was briefed.

## Discussion

### A.      Applicable Class Period

The City moves to restrict the class period to eliminate any allegedly discriminatory acts occurring before June 27, 2009, which is 300 days before Vasich filed her charge of class-wide sex discrimination with the EEOC. The City argues that Vasich's charge is the first and only one that alleged discrimination against all female applicants based upon the use of the PAT. The City points to the absence of any mention of the PAT in most of the pre-Vasich charges, the exclusive use of first-person pronouns in all of the charges (*e.g.*, "I was discriminated against"), and the failure of any charge to refer to any other individuals, let alone a class.

On the other hand, the plaintiffs identify the start of the class period as September 11, 2007, a date they say derives from Jessica Evans's EEOC charge. They claim that this charge

and the ensuing EEOC investigation placed the City on notice that the alleged discrimination was much broader than any individual's experience not getting hired or promoted.

Claims of discrimination under Title VII are subject to a 180- or a 300-day window for filing an EEOC charge. 42 U.S.C. § 2000e–5(e); *Turner v. The Saloon, Ltd*., 595 F.3d 679, 684 & n.5 (7th Cir. 2010). The longer period applies where the claimant files a charge with the appropriate state or local agency. *See Moore v. Vital Products, Inc*., 641 F.3d 253, 256 (7th Cir. 2011). Any complaint of conduct that occurred more than the 180 or 300 days before the relevant charge (depending upon which period applies) is time-barred. *Id*. Here, there is no indication that any plaintiff went first to the Illinois Human Rights Commission or other local authority; the record contains only charges filed with the EEOC. Yet the City applies the longer 300-day limit to calculate the start of the class period. As for the plaintiffs, it is unclear how they arrived at the start of their proposed class period: September 7, 2007 is neither 180 nor 300 days from the date of Evans's April 8, 2008, charge. (The plaintiffs argue that Evans's charge "serves as the temporal beginning" of the class period. Memorandum, Dkt. #62 at 2 n.1.) Presumably the parties will clarify their calculations going forward. But the legal issues before the Court require it only to decide which charge(s) the time period should be pegged to.

That question comes down to whether the claims in the class-action complaint are fairly within the scope of any pre-Vasich EEOC charge. Only claims that were originally included in the EEOC charges may be asserted in a lawsuit under Title VII. *Moore*, 641 F.3d at 256. This is not a completely rigid determination; a plaintiff can include in a lawsuit any claims that are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id*. This means that the claim and the EEOC charge "must, at minimum, describe the same conduct and implicate the same individuals." *Id*. at 257. "Discrete discriminatory acts

are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Whether the plaintiffs' discrimination claims fall within the scope of their EEOC charges is a pure question of law. *Moore*, 641 F.3d at 257.

Any charge of discrimination based on race, sex, religion, or national origin necessarily implicates the claimant's membership in a protected class of persons. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982). ("We cannot disagree with the proposition underlying the across-the-board rule—that racial discrimination is by definition class discrimination"). It does not follow, however, that any charge of discrimination against a member of the protected class signals discrimination against the class as a whole, let alone that the procedural device of a class action is an appropriate way to litigate it. *See id*. Otherwise, every discrimination charge would be a class action.

Therefore, the charge itself must give notice in some fashion that the discrimination was against not only the claimant but an entire group or class of people. *Schnellbaecher v. Baskin Clothing Co*., 887 F.2d 124, 127-128 (7th Cir. 1989). Relevant considerations are whether the allegations in the charge "referred to a specific individual instance of discrimination," and whether the ensuing EEOC investigation was sufficiently broad "to put the defendants on notice that the plaintiffs intended to file a complaint alleging class-based discrimination." *Id*. at 128. If the administrative proceedings do not give the defendant sufficient notice of class-wide claims, then the lawsuit exceeds the scope of the EEOC charge(s) and cannot be maintained as a class action. *See id*. (affirming dismissal of class claims); *Bluford v. Swift Transp*., 2012 WL 1755772, at *6 (N.D. Ill. May 16, 2012) (dismissing class claims); *Metz v. Joe Rizza Imports, Inc*., 700 F.

8

Supp. 2d 983, 991-92 (N.D. Ill. 2010) (narrowing class claims); *White v. Mercy Hosp. & Med. Ctr.*, 1994 WL 249545, at *2-3 (N.D. Ill. June 7, 1994) (dismissing class claims); *Latuga v. Hooters, Inc*., 1994 WL 113079, at * 2 (N.D. Ill. April 1, 1994) (dismissing class claims). However, when notice is explicit or can be fairly gleaned from the charge or investigation, the class claims may remain. *See Anderson v. Montgomery Ward & Co.,* 852 F.2d 1008, 1017 (7th Cir. 1988) (charge gave sufficient notice under ADEA); *EEOC v. Roadway Express, Inc*., 2007 WL 2198363 (N.D. Ill. July 31, 2007) (EEOC investigation gave sufficient notice of class claims); *Buie v. Experian Info. Solutions, Inc*., 1998 WL 729614, at *4 (N.D. Ill. 1998) (charge gave fair notice of "pattern or practice" claim); *Levine v. Bryant*, 700 F. Supp. 949, 956 (N.D. Ill. 1988) (charge "clearly" alleged class-wide discrimination).

In this case, the earliest charges of discrimination did not suffice to give the City notice of class-wide claims based on the PAT. Each charge spoke only of discrimination against the charging woman herself, using the pronouns "I" and "my," exclusively. Not one of them referred to any other applicants or to discrimination against women in general. The plaintiffs' only retort is that Minnick's EEOC intake form lists three "similarly situated" women, but they do not dispute that the City did not see that document until this lawsuit was filed, so it could not have given the City prior notice of class claims. And the purpose for which Minnick listed the other women is far from clear because she did not completely answer the form's question—a question which, in any case, could be intended to identify "similarly situated" comparators who were treated *more* favorably, as required by the indirect method of proof, not "similarly situated" discrimination *victims*, which is what the plaintiffs say Minnick was doing. The form is too ambiguous to be the basis of notice of class-wide claims, even if the City had seen it.

In concluding that the pre-Vasich charges contain no hint of class-wide claims, the Court is not holding the plaintiffs to a "magic words" standard. The Seventh Circuit has said, in the comparable ADEA context, "we do not believe that such an explicit mention that a representative action is contemplated is necessary." *Anderson,* 852 F.2d at 1017. This Court does not suggest otherwise, and would not require an "explicit mention" of class action if the complainants otherwise signaled the existence of a broader class of plaintiffs. Here, even mentioning that the universally administered PAT test was unfair to women could have tipped off the City that it might be in trouble with a whole class of applicants. But the pre-Vasich charges do not complain about the PAT in any way—its scoring, its administration, or even its existence. The plaintiffs argue that the City's responses to the charges reflect its understanding that the plaintiffs were challenging the PAT. But raising the PAT as a *defense* doesn't signal that the City knew that the PAT itself was being challenged (to the contrary, it suggests that the City did *not* understand the pre-Vasich charges to be challenging the PAT). The City equally could have invoked the PAT as a defense to a general charge that it failed to hire the complainant because of her gender. The bare-bones charges, each of which complains in general terms of the failure to hire or promote the charging woman alone, and most of which do not even mention, let alone criticize, the pre-hire test currently challenged on a class-wide basis, did not give the City reason to anticipate *this* class action.

The plaintiffs also point to the sheer number of charges made within a short time period and insist that the City must have had notice of class-wide claims. The Court disagrees. First, only five charges preceded Vasich's (by well over a year). That number is not insignificant, but it does not give notice of a potential lawsuit by a class of *all* female applicants. Also, the number of 2008 charges in itself did not forecast a class-action *based on the test for physical abilities.*

Although all five claimants charged discrimination based on sex, only two even mentioned the PAT—now the sole basis of the class-wide discrimination claims in the plaintiffs' complaint. And only one of these women, Bailey, indicated that she failed the test; Evans simply listed her test date in a timeline of her application process. The City could not necessarily anticipate, based upon the five pre-Vasich charges, that it would be subject to suit by all female applicants who failed the PAT.

The plaintiffs also argue that allegations of class-wide discrimination were suggested by the EEOC's investigation—in particular, the "class-wide" discovery sought by the agency. First, the Court is mindful of the Seventh Circuit's explanation that "although the investigation may help define the scope of the charge, it is primarily the charge to which we look in determining whether the scope requirement is satisfied." *Schnellbaecher*, 887 F.2d at 127. Here, as discussed above, the charges themselves give no suggestion of class-wide claims. Second, "class-wide" discovery is the plaintiffs' label, not the agency's. The plaintiffs do not supply any communications from the EEOC that indicate it was investigating discrimination against a "class" based on the pre-Vasich charges. The July 2008 request for information refers only to the Evans charge and does not use the label "class" or otherwise signal a broader investigation. Requesting general hiring statistics does not give notice than an individual claim has become a class action. *Id*. at 128 ("To be sure, the EEOC . . . sought payroll records for all sales persons and an explanation for the differences between the salaries of male and female sales persons"). True, the case here is slightly stronger because the EEOC later consolidated the charges, which gave notice of the overlap between multiple claims. But although this foreshadows joinder of claims, it is not enough to give notice of a potential class action. And, at any rate, the EEOC did not issue a consolidated discovery request until March 25, 2010, just a week before Vasich filed

her charge. Therefore, even if this subpoena counts as "notice," it came almost contemporaneously with Vasich's class-wide charge, and does not justify extending the class period back into 2007.[4]

A few more points bear brief mention. First, the plaintiffs' reliance on *McDonald v. United Airlines, Inc.*, 587 F.2d 357, 361 (7th Cir. 1978), for the proposition that the City's "notice of and liability before class claims is triggered by the first filed charge" is misplaced. The case states only the uncontroversial proposition that the class period begins "when one *member of the class* initiates the grievance mechanism" (emphasis added). An individual is not a "member of the class" if his or her claim falls outside the class period. The *McDonald* court's ultimate definition of the class period rested on when a charge first put the defendant "on notice . . . that aggrieved stewardesses were challenging its no-marriage rule policy." *Id.* at 361. That is the same approach this Court takes here.

Second, the Court is unpersuaded by the argument that the City was on notice because same EEOC investigator was assigned to all of the pre-Vasich charges (even assuming that plaintiffs adequately supported this purported fact, which the City disputes). How the EEOC staffed its investigation says nothing about whether the City reasonably could have anticipated a class action. And the Court has already addressed the argument that the charges were so numerous as to inherently constitute notice of class-wide claims.

---

[4] The plaintiffs do not argue or cite any authority to the effect that a charge, once consolidated with an earlier one(s), "relates back" to the date of the earliest consolidated charge. The EEOC's regulations include a "relation back" provision, but it concerns amendments to a charge that clarify or amplify the allegations in that charge, not another person's charge. *See* 29 C.F.R. § 1601.12(b). Even that provision, however, does not allow additional allegations in any amendment to expand the scope of the original charge. *E.g., Cheek v. W. & Sn. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994). Adding class allegations would be an expansion, not a mere clarification or amplification.

Finally, the Court rejects outright the plaintiffs' argument that City officials (CFD Assistant Commissioner for Labor Relations Charles Killman, Jr. and First Deputy Chief Charles Stewart III) "admitted" knowing of class-wide claims before Vasich's charge was filed. The "admissions" the plaintiffs cite are selective quotations artfully patched together. *See* Local Rule 56.1 Statement of Additional Facts, Dkt. # 62-1 at ¶¶ 22-24. When viewed in context, the testimony does not bear the weight plaintiffs place on it. Indeed, Deputy Chief Stewart took care to disavow plaintiffs' counsel's statement that each charge claimed "that the physical abilities test being used to screen firefighter/EMT candidates discriminated against *women*"; he stated: "No. I understood the claim to be that 'I'd been discriminated because of my sex, female, with respect to not being selected." Stewart Deposition, Defendant's Reply Exhibit 4, Dkt. # 67-1 at 89-90. As for Killman, far from admitting, as the plaintiffs assert, that he received "class-wide" discovery from the EEOC, at his deposition all he did was respond "I do" when asked whether he could see that the March 2010 subpoena requested "information about the final test scores of applicants who completed the PAT, as well as eligibility lists compiled as a result of the PAT." Plaintiffs' Response, Exhibit 11, Dkt. # 62-2, at 54. This is not an admission that the City had notice of "class-wide" allegations.[5] Again, that phrasing belongs to the plaintiffs' counsel, not the City (or the EEOC).

---

[5] As noted, even if the March 2010 subpoena finally constituted notice to the City, Vasich's charge was filed very shortly afterward, so the difference in timing would be negligible. And Plaintiffs fail to support their argument (in a footnote, *see* Dkt. #62 at 9 n.12) that when an investigation, not a charge, is the source of the defendant's notice, that notice "relates back" to the date of the charge. The cited case is not controlling, but, moreover, it does not make this point. Instead, Magistrate Judge Nolan explained, and this Court agrees, that: "When the EEOC's actual investigation is broader than the underlying charge and the employer has notice of the nature of the broader claims and an opportunity to conciliate those claims, the purposes behind the exhaustion of administrative remedies requirement are met and the employee should not be barred from filing a judicial complaint addressing the broader investigated claims or claims reasonably related to the investigated claims." *EEOC v. Roadway Express, Inc.*, 2007 WL

Requiring Title VII plaintiffs to connect a lawsuit to an earlier administrative charge serves a purpose: notifying the defendant of the allegedly discriminatory conduct to facilitate conciliation and voluntary compliance with anti-discrimination laws without litigation. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008); *Hottenroth v. Vill/ of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994); *Schnellbaecher*, 887 F.2d at 127. Class-action plaintiffs, like any others, cannot "bypass the EEOC and head straight for the courts" without giving notice of the class-wide claims and affording the defendant an opportunity to conciliate on that basis. *See Hottenroth*, 338 F.3d at 1015. Once lost, the opportunity to efficiently resolve the grievance through cooperation cannot be created retroactively. None of the plaintiffs' arguments persuade the Court that the purpose of the Title VII "exhaustion" requirement would be served by allowing the class period to extend back to the first 2008 charge. (Indeed, why stop there? If Evans's general charge of sex discrimination gives adequate notice of a class action about the PAT, then any earlier charge against the fire department mentioning "discrimination based on sex" did the same.)

Because it was not until Vasich's 2010 charge that any woman complained about class-wide discrimination based on the use of the PAT, her charge must define the class period. The class period therefore begins 180 or 300 days before Vasich's charge of April 10, 2010. For that reason, the Court grants this portion of the City's motion for partial summary judgment.

### B.    Standing to Seek a Mandatory Injunction

The City next argues that the plaintiffs lack standing to obtain the mandatory injunction they request in ¶ 156 of the Second Amended Complaint (and ¶ 174 of the Third Amended

---

2198363, at *4 (N.D. Ill. July 31, 2007). *Roadway Express* says nothing about "relation back," and the Court further notes that, unlike here, in that case, the EEOC explicitly found "reasonable cause to believe Roadway engaged in *class-wide* discrimination." *See id.*

Complaint): "An order requiring the City to adopt a valid, non-discriminatory method for determining where firefighter/EMT candidates are physically capable of performing the job." Thereafter in its brief, the City intermittently refers to a proposed injunction requiring the plaintiffs' participation in the formulation of a new test. Memorandum, Dkt. # 47 at 13, 14-15. The Court does not see any such request in the Complaint, however, and it therefore disregards these confusing references in addressing the standing argument.

A plaintiff must demonstrate standing "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 185 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages but not injunctive relief); *Pavarti Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Friends of the Earth, Inc.*, 528 U.S. at 180-81.

Here, the City primarily argues that there is no threat of a concrete injury to the plaintiffs, let alone one that is actual and imminent. The remainder of the City's arguments against standing actually address whether the Plaintiffs can show their entitlement to injunctive relief by satisfying the elements of (1) irreparable harm, (2) the inadequacy of monetary damages as a remedy; (3) a favorable balance of hardships; and (4) service of the public interest. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The City's arguments that the plaintiffs will be unable to satisfy these elements do not support their claim that standing is lacking, and they will not be considered in that context. *See Arreola v. Godinez*, 546 F.3d 788, 794–95 (7th

Cir.2008) ("Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim ... determine whether the plaintiff is *entitled to relief*") (emphasis in original).[6]

In its main argument against standing, the City states, and has evidence to support, that it "has no plans to use" the PAT in the future, and that it has requested proposals from testing vendors to develop a replacement test. Therefore, it says, the plaintiffs cannot show an immediate threat of suffering a concrete injury. The plaintiffs (understandably) took the City to be arguing mootness, and their response brief attempts to show the existence of a live controversy. In its reply brief, however, the City stridently insists that it is not arguing mootness by cessation of conduct, only standing and "ripe[ness]." The gist is that there isn't a significant likelihood of an immediate, concrete injury because whatever (as yet unannounced) hiring process the City uses in the future should not be presumed to be discriminatory.

Weighing the somewhat convoluted arguments, the Court concludes that the plaintiffs have standing to seek an injunction requiring the City to develop a non-discriminatory physical abilities test. Title VII specifically contemplates equitable relief, including injunctions, to remedy intentional discrimination. *See* 42 U.S.C. 2000e-5(g). And, as the plaintiffs point out, injunctions related to testing or hiring standards have been found appropriate. *E.g., Bates v. United Parcel Serv., Inc.*, 465 F.3d 1069, 1093 (9th Cir. 2006); *Bouman v. Block*, 940 F.2d 1211, 1233 (9th Cir. 1991); *Guardians Ass'n of New York City Police Dep't., Inc. v. Civil Service Comm'n,* 630 F.2d 79, 108-109 (2d Cir. 1980). There does not appear to be anything special about this case

---

[6] The plaintiffs fall into the same trap of conflating standing with the merits in arguing that "the question of the propriety of injunctive relief is also premature because Plaintiffs have not conducted the discovery necessary." Memorandum, Dkt. #62, at 13 n.16. As noted, standing is a prerequisite to filing suit; thus, discovery should not factor in.

that would preclude the plaintiffs from requesting this relief in their complaint. Whether they will ultimately be entitled to that relief is an open question that is not before the Court at this stage. But because all the named plaintiffs attest that they intend to seek positions as Firefighter-EMTs in the future, their allegations are sufficient to plead a likelihood of imminent, concrete injury (assuming that the plaintiffs prove that the PAT is discriminatory).

If the City had established beyond dispute that it has discontinued the use of the PAT altogether, then the Court's decision might be different.[7] Voluntary cessation of the challenged conduct can render action for an injunction moot, but only where the defendant clearly demonstrates that there is no reasonable expectation that the wrong will be repeated. *Friends of Earth, Inc.*, 528 U.S. at 189. If it were clearly shown that, for example, that physical ability testing had been abandoned altogether, then perhaps the plaintiffs could not maintain an action for an injunction. But all the evidence shows is that the City presently "has no plan" to use the PAT again. This consistent, very careful, choice language by the City leaves room for the use of that test in the future—so long as the use is not planned as of this moment. (That the City has not made, and explicitly rejects, a mootness argument further suggests a possibility of repeating the alleged injury.) Moreover, the City has not said that no new hiring will be done until the new testing protocol is in place; nor has it provided evidence of how it will evaluate Firefighter-EMT candidates pending the development of that new test by outside vendors. As of now, the City is merely "in the process of selecting a vendor."[8] The Court cannot assume, with no evidence in the record, that a future test will not adversely impact women, inherently or through the manner of

---

[7] In a way, it is the City's argument that is not yet "ripe." It asks the Court to chuck the request for injunctive relief based upon a replacement test for the PAT that is as-yet only hypothetical and in the early stages of investigation.

[8] The City reports in a supplemental filing that it has now engaged a vendor, but this fact does not change the analysis; the new test has not yet been designed or implemented.

its administration and scoring. In short, the City has not closed the door on the repetition of the plaintiffs' injury in the future simply because it says it "has no plan" to give the PAT.

Although the Court concludes that there is standing in this case, a potential problem with the prospective injunctive relief sought in ¶ 156 is that it would essentially require the City to follow the law. The City *already has* a legal obligation to employ a "valid, non-discriminatory method for determining where firefighter/EMT candidates are physically capable of performing the job." Federal law prohibits discrimination in hiring based on sex, including by using testing procedures that disproportionately affect women. See 42 U.S.C. § 2000e-2(h)("professionally developed ability . . . test, its administration or action upon the results" cannot be "designed, intended or used to discriminate because of race, color, religion, sex or national origin.") Issuing a mandatory injunction that says, in essence, "follow the law," is not typically a fitting remedy when the defendant is alleged to have broken the law in the past. That said, use of such prospective injunctions is sometimes allowed as part of the remedy for past intentional discrimination. "Affirmative injunctive relief for past discriminatory practices is appropriate where the court believes that 'the vestiges of prior discrimination linger and remain to be eliminated.'" *United States v. Di Mucci*, 879 F.2d 1488, 1498 (7th Cir. 1989) (quoting *United States v. Hunter*, 459 F.2d 205, 219 (4th Cir.)). A court may order injunctive relief once it finds "that the defendant intentionally engaged in an unlawful employment practice" if "the discriminatory conduct could possibly persist in the future." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578–79 (7th Cir. 1997). The Court flags this issue now because, although they have survived the challenge to standing, going forward, the plaintiffs bear the burden to show that any past discrimination they prove may also persist in the future; this fact is not assumed.

## II.     Motion to Dismiss Count II of the Third Amended Complaint

With leave of this Court, the plaintiffs further amended their complaint on October 16, 2012. The Third Amended Complaint reprises the disparate impact and disparate treatment claims alleged in the earlier pleadings. The main difference is the addition of plaintiff Jessica Evans. Now the City moves to dismiss the disparate treatment claim, Count II, arguing that the plaintiffs fail to set forth sufficient facts to plausibly state a claim of intentional discrimination.

As noted, the allegations of disparate treatment are not new to the Third Amended Complaint. The City previously answered that claim. *See* Answers, Dkt. # 45 at 40, Dkt. # 26 at 27-28. But it claims that new law—the Seventh Circuit's opinion in *McReynolds v. Merrill Lynch & Co*., 694 F.3d 873 (7th Cir. 2012) ("*McReynolds II*")—establishes a pleading standard for intentional discrimination cases that the plaintiffs have failed to meet. The Court does not view *McReynolds II* as creating or even clarifying a pleading standard. Instead, the case straightforwardly applies the existing *Twombly / Iqbal* standard to a complaint that alleges intentional discrimination. *Id*. at 885-86; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007). The City's argument against Count II was available long before the *McReynolds II* decision (as evidenced by the defendants' arguments in that case, among other things). But that doesn't matter; the City does not require new law to justify its current motion. The Third Amended Complaint completely supersedes all prior pleadings, and it is well-settled that defendants are entitled to use the same clean slate that plaintiffs are afforded when amendment is permitted. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Given that the City previously saw fit to answer the same allegations the first few times they were made, its current motion chafes at the spirit, if not the letter, of Rule 12. *See* Fed. R. Civ. P. 12(b)(6) (instructing that a Rule 12(b)(6) motion "*must* be made before pleading if a responsive pleading

is allowed). But the City's approach, however inefficient, appears to be permissible (and in any event the plaintiffs have not objected to it).

In reviewing the City's motion to dismiss, the Court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 127 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010). However, the Court does not accept as true any allegations that are mere legal conclusions. *Iqbal*, 556 U.S. at 679–80.

Federal Rule of Civil Procedure 8(a)(2) requires a federal complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This means the complaint must contain sufficient detail to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545. A complaint contains enough detail if it presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the required level of factual specificity "rises with the complexity of the claim," *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011).

The defendants base their motion to dismiss solely on *McReynolds II*, in which the Seventh Circuit affirmed dismissal of an intentional-discrimination claim alleging that Merrell Lynch's use of a retention bonus program with a disparate effect on black employees was intended to cause black employees to leave the firm at high rates. 694 F.3d at 885. The Court held that the plaintiffs failed to allege sufficient facts to make their contention of intentional discrimination plausible. *Id*. at 887. The disparate treatment claim consisted of four repetitive sentences that concluded, without any factual detail, that the defendants intended to discriminate. *Id*. at 886. Notably, the plaintiffs did not allege that the bonus program itself was created or

maintained with a discriminatory motive—it was the resultant attrition of black employees that the plaintiffs alleged to be intentional. *Id.* at 887.

Drawing on *McReynolds II*, City argues here that the only allegations in the Third Amended Complaint that relate to intentional discrimination are conclusory statements of law that must be disregarded under *Iqbal*—for example, the assertion that the City used the PAT "with the intention of discriminating against female firefighter/EMT applicants or with reckless disregard of the fact that the firefight/EMT [PAT] and its use have that unlawful effect." 3d Am. Comp., Dkt. # 78 ¶ 13. The Court agrees that this allegation and others like it cannot be taken as true on a motion to dismiss; they are the sort of legal conclusions that *Iqbal* says the Court need not accept.

But the defendants are wrong to suggest that the *only* relevant allegations in the Third Amended Complaint are bare legal conclusions. The complaint contains several factual allegations that, if true, would permit an inference of intent under the law governing disparate treatment claims. The plaintiffs specifically allege, for example, that the City of Chicago historically discriminated against qualified women in its hiring of firefighters, and that it has historically used discriminatory tests to screen applicants to the fire department. 3d Am. Compl., Dkt. # 78 at ¶¶ 4, 64. A history of similar discrimination can be probative of the defendant's motives or intent in a given case. *See, e.g., Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 678 (7th Cir. 2012) ("history of discrimination" would be probative of discriminatory motive for disparate treatment); *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 863 (7th Cir 2007) (evidence that employer had never before discriminated in the manner alleged supported defense to claim of intentional discrimination). Under the indirect method of proving intentional discrimination, a history of past discrimination is relevant to the element of pretext.

21

*See, e.g., Sublett v. John Wiley & Sons, Inc*., 463 F.3d 731, 739 (7th Cir. 2006). Thus, the plaintiffs' factual allegations pertaining to the fire department's history of discrimination are among the allegations relevant to their disparate treatment claim.

The plaintiffs also allege an obvious statistical shortage of female firefighters long known to the City and a statistically significant difference in PAT passage rates. 3d Am. Comp., Dkt. # 78 ¶¶ 4, 59. Although statistical disparities are not dispositive, they can be evidence of intentional discrimination. *See, e.g., McNamara v. City of Chicago*, 138 F.3d 1219, 1223 (7th Cir. 1998) (discussing statistical evidence while noting that it is not alone probative of intent); *Coates v. Johnson & Johnson*, 756 F.2d 524, 540 (7th Cir. 1985) ("statistical disparities between black and white discharge rates may be a telltale sign of purposeful discrimination"); *Babrocky v. Jewel Food Co*., 773 F.2d 857, 867-68 (7th Cir. 1985) ("Supreme Court acceptance of statistical proof is well established."). Indeed, the Supreme Court called it "unmistakably clear" that statistics play an "important role" in proving discrimination. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977)(collecting cases). It is even possible to establish a prima facie case of discrimination just with statistical evidence. *See Babrocky*, 773 F.2d at 868.

Furthermore, the plaintiffs directly challenge the PAT itself as a device deliberately used to screen out female applicants and unjustified by any legitimate purpose. 3d Am. Comp., Dkt. # 78 ¶¶ 4, 7-8, 12-13, 60-63. They do not appear to allege that the PAT was created or adopted for that purpose, but it suffices to allege that the test was "selected *or* reaffirmed" to keep women out of the Fire Department. *See Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979). The plaintiffs allege that there is no empirical evidence that the PAT gauges abilities that positively correlate with job performance, nor any studies showing that the PAT accurately measures the physical abilities it purports to assess. They each allege that they were and are

22

physically capable of being firefighters but were nevertheless were told they failed the PAT (although they claim not to have been told how they fell short). The plaintiffs' direct challenge to the PAT as a discriminatory device that lacks a valid purpose distinguishes this case from *McReynolds II*, where the Seventh Circuit repeatedly emphasized that the plaintiff had failed to allege facts suggesting that "*the retention program itself* was intentionally discriminatory." 694 F.3d at 877 (emphasis in original). Here, the plaintiffs say just that about the PAT.

*McReynolds II,* like other cases before it, holds that to state a disparate treatment claim it is not enough to allege that a hiring practice was maintained despite its disparate impact on minorities. *Id.* at 887. This Court's decision does not depart from that principle: although the plaintiffs do assert that the City knowingly retained a hiring practice with a discriminatory effect, their factual allegations throughout the complaint go further. Thus, reading the Third Amended Complaint in its entirety, the Court does not agree with the City that the plaintiffs "fail to allege an intentional effort by the City to eliminate women . . . through the use of the [PAT]." That intentional effort is alleged by way of a history of discrimination, a continuing statistical shortage of women hires, and the continued use of a test that has been not been proven to positively identify successful applicants but impedes female applicants. Taking these as-yet unproved allegations as true, the plaintiffs plausibly state a claim that the City intended the PAT to screen out otherwise qualified female applicants. Of course, it remains for plaintiffs to marshal evidence and prove discriminatory intent.

***

For the reasons explained above, the Court GRANTS the City's partial summary judgment motion seeking limitation of the class period and DENIES the motion insofar as it

seeks dismissal of the request for prospective, mandatory injunctive relief. The motion to dismiss

Count II of the Third Amended Complaint is DENIED.

Entered: January 7, 2013

_____
John J. Tharp, Jr.
United States District Judge