**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SAMANTHA VASICH, *et al.*,<br>Plaintiffs,<br>v.<br>CITY OF CHICAGO, a municipal corporation;<br>Defendant. | Case No.: 1:11-cv-04843<br>Judge John J. Tharp |
| KATHERINE GODFREY, *et al.*,<br>Plaintiffs,<br>vs.<br>CITY OF CHICAGO, a municipal corporation<br>Defendant. | Case No. 12 C 08601<br>Judge John J. Tharp, Jr. |

**DEFENDANT'S OPPOSITION TO**
**REMOVAL OF CONFIDENTIALITY DESIGNATION**

The City of Chicago (the "City") respectfully requests this Court to preserve the confidentiality designation on Exhibits I, K, and L of Plaintiffs' Motions for Class Certification, filed on February 12, 2013. *See* Pls.' Mot. for Class Cert., ECF Nos. 110-113 (*Vasich*), ECF Nos. 29-33 (*Godfrey*) (Feb. 12, 2013). Although Plaintiffs have requested leave to file Exhibits H, I, J, K, and L of their certification motions under seal, *see* Pls.' Mot. for Leave to File Under Seal, ECF No. 114 (*Vasich*), ECF No. 34 (*Godfrey*) (Feb. 12, 2013), the City has no objection to the unsealed filing of Exhibits H and J. However, Exhibits I, K, and L of Plaintiffs' motions contain sensitive, commercial data that is not appropriate for public disclosure under Federal Rule of Civil Procedure 26(c)(1)(G). Moreover, the City can show good cause as to why

the proprietary information contained in these exhibits must be protected. Accordingly, the City requests this Court to grant Plaintiffs' request to file Exhibits I, K, and L under seal.[1]

## MATERIAL FACTS

On February 12, 2013, Plaintiffs filed motions for class certification. *See* Pls.' Mot. for Class Cert., ECF Nos. 110-113 (*Vasich*), ECF Nos. 29-33 (*Godfrey*) (Feb. 12, 2013). In support of those motions, Plaintiffs offered several exhibits, five (5) of which had previously been designated as "confidential" by the City under the Protective Order entered on November 16, 2011. *See* Stipulated Protective Order, ECF No. 30 (*Vasich*) (Nov. 11, 2011). In light of that confidentiality designation, Plaintiffs requested leave to file these five (5) exhibits (H, I, J, K, and L) under seal. *See* Pls.' Mot. for Leave to File Under Seal, ECF No. 114 (*Vasich*), ECF No. 34 (*Godfrey*) (Feb. 12, 2013).

As indicated above, Exhibits H and J are not at issue in this opposition. However, Exhibits I, K, and L contain sensitive, commercial data that is not appropriate for public disclosure. Specifically, Exhibits K and L are a 1996 validation study and a 2007 transportability study conducted by Human Performance Systems, Inc. ("HPS"), the company that designed and implemented the physical abilities test ("PAT") at issue. *See* Decl. of Todd Baker in Supp. of Def.'s Opp'n to Removal of Confidentiality Designation ("Baker Decl.") ¶¶ 7-8 (Feb. 20, 2013), attached hereto as Exhibit 1. Not only do these exhibits contain proprietary research and development information, they detail the process by which HPS

---

[1] On February 21, 2013, counsel for the City contacted counsel for Plaintiffs in order to determine whether Plaintiffs were amenable to the relief sought by this opposition (*i.e.*, the release of Exhibits H and J, and the filing under seal of Exhibits I, K, and L). Although counsel for Plaintiffs indicated that she would send an e-mail to her co-counsel advising of the City's request, no response had been provided to the City by the close of business on February 21, 2013 (the date on which this opposition was due). Accordingly, the City proceeded to put this opposition on file.

validated and updated the PAT such that competitors could reproduce these results merely by examining them. *See id.* ¶¶ 9-12. Similarly, Exhibit I contains correspondence that lists the steps taken by HPS to complete the studies contained in Exhibits K and L. Due to the sensitive, nonpublic nature of this information, the City designated each of these exhibits as "confidential" upon production.

Although Plaintiffs did not contact the City prior to submitting their request for leave to file under seal on February 12, 2013, the City did not initially intend to oppose or comment on that request. However, at the motion hearing held on February 18, 2013, the Court indicated that it intended to treat Plaintiffs' motions to file under seal as constructive requests to remove the confidentiality designation from Exhibits I, K, and L. Accordingly, the City submits this "opposition" to Plaintiffs' motions in order to justify the continued treatment of these documents as "confidential" under the terms of the Protective Order.[2]

**<u>LEGAL STANDARD</u>**

Federal Rule of Civil Procedure 26(c)(1)(G) authorizes any party or person to seek protection for a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). To obtain this protection (or to maintain it under an existing protective order), the party seeking protection must establish: (1) that the information at issue is in fact a trade secret or confidential commercial information; and (2) that good cause exists to protect the information. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

[2] To the extent that Plaintiffs submit a reply to this opposition that contains affirmative arguments for removing the confidentiality designation from Exhibits I, K, and L, the City reserves its right to seek leave to file a surreply that refutes any arguments raised for the first time by Plaintiffs in this fashion.

Although there is no *per se* rule that exempts confidential business information from release, "courts must exercise discretion to avoid unnecessary disclosure of such information." *AutoMed Techs, Inc. v. Eller,* 160 F. Supp.2d 915, 925 (N.D. Ill. 2001) (quoting *Triangle Ink & Color Co. v. Sherwin-Williams Co.*, 61 F.R.D. 634, 636 (N.D. Ill. 1974)).

**ARGUMENT**

In order to establish that Exhibits I, K, and L are confidential under the terms of the Protective Order, the City must establish: (1) that the information that appears in these exhibits is in fact confidential commercial information; and (2) that good cause exists to protect this information. *Culinary Foods, Inc.*, 151 F.R.D. at 300 (citation omitted). The sensitive, nonpublic nature of the information contained in these exhibits satisfies both elements in the instant case.

## I. Exhibits I, K, and L Contain Confidential Commercial Information

When deciding whether proprietary business information is subject to protection under F.R.C.P. 26(c)(1)(G), state and federal courts typically look to the Restatement of Torts for guidance. *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (citing *United States v. IBM Corp.*, 67 F.R.D. 40, 46 n.9 (S.D.N.Y. 1975) ("The Restatement definition [of trade secrets] has been supported in both state and federal courts.")). Under the Restatement, a trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know it or use it." Restatement of Torts § 757(b) (1939). Common law factors that courts consider in order to determine whether information conforms to this definition include:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the measures taken to guard the information's secrecy; (4) the value of the

> information to the business or to its competitors; (5) the amount of time, money, and effort expended in the development of the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*See CardioNet, Inc. v. LifeWatch Corp.*, No. 07 C 6625, 2008 WL 567223, at *3 n.3 (N.D. Ill. Feb. 27, 2008) (citation omitted); *see also Andrew Corp.*, 180 F.R.D. at 341.

Here, each of the factors set forth above weighs in favor of preserving the confidentiality of Exhibits I, K, and L. As a threshold matter, the design and implementation of physical performance examinations for governmental entities is a narrow market. Baker Decl. ¶ 4. Aside from HPS, only a limited number of consultants have the capacity and expertise to validate a physical performance test used by a municipal fire department. *Id*. Consequently, the information that appears in Exhibits I, K, and L is largely unknown outside of this highly specialized field.

Notwithstanding this fact, the methods of operation used by HPS and its primary competitors are not the same. *Id*. ¶ 5. To the contrary, HPS employs unique models of data collection and review for its assignments. *Id*. Exhibits K and L (and also Exhibit I as a summary of those exhibits) contain numerous calculations, observations, and conclusions that were derived through intensive field work and novel analysis. *Id*. ¶ 9. The fundamental research techniques employed by HPS to create these documents are the result of thousands of hours of labor, and hundreds of thousands of dollars that the company has expended to improve its capabilities over the past 24 years. *Id*. ¶ 6.

In addition, HPS is extremely focused on ensuring the secrecy of its work-product. The results of any studies conducted for the clients of HPS are closely guarded, primarily to guarantee that competitors cannot profit from legwork or novel approaches to information

gathering that are first undertaken by HPS. *Id.* ¶ 5. In fact, to further safeguard the integrity of its findings, HPS typically seeks copyright protection for its reports and analyses in order to prevent unlawful use and/or reproduction of sensitive, proprietary data. *Id.*

Finally, the information contained in Exhibits I, K, and L represents a substantial investment of time and money to obtain, and could not be acquired or duplicated without similar investment by a competitor or third party. *Id.* ¶¶ 9, 11. In particular, the most sensitive data contained in these exhibits is the "task list." *Id.* ¶ 9. The task list is a compilation of the duties and responsibilities that are inherent to the position of an entry-level firefighter. *Id.* In order to create this list, HPS spent hundreds of hours interviewing, observing, and surveying incumbent firefighters from numerous jurisdictions in order to identify the essential tasks for which the PAT had to test in order to be job-related. *Id.* The task list was revised and modified numerous times before it was complete, *id.* ¶ 10, and the only means for a competitor to independently duplicate or acquire this information would be to engage in the same interview and survey process that was first conducted by HPS. *Id.* ¶ 11.

In sum, under each of the common law factors set forth above, the sensitive, nonpublic information that appears in Exhibits I, K, and L qualifies as confidential commercial information that is subject to protection under F.R.C.P. 26(c)(1)(G).

## II. Good Cause Exists to Preserve the Confidentiality of Exhibits I, K, and L

To establish the requisite good cause to protect information under F.R.C.P. 26(c)(1)(G), the party that bears the burden must demonstrate that "disclosure 'will work a clearly defined and very serious injury'" to business operations. *Culinary Foods*, 151 F.R.D. at 300 n.1 (quoting *IBM Corp.*, 67 F.R.D. at 46). Therefore, in order preserve the confidentiality of Exhibits I, K, and L, the City must show "with specificity" that a particular and definite injury to HPS will

occur in the event that these documents are not filed under seal. *Harrisonville Tel. Co. v. Illinois Commerce Comm'n*, 472 F. Supp.2d 1071, 1078-79 (S.D. Ill. 2006). As discussed further below, because the public disclosure of these exhibits would provide a copy of the task list to every major competitor of HPS, this requirement is satisfied in the instant case.

With regard to the design and implementation of physical performance examinations, the process through which HPS and other consultants compete for government contracts is based on competitive bidding. Baker Decl. ¶ 12. As indicated above, the most important advantage currently held by HPS is the task list, which was assembled after hundreds of hours of interviewing, observing, and surveying incumbent firefighters from numerous jurisdictions. *Id*. ¶¶ 9, 10. However, in the event that a competitor of HPS was to obtain a copy of the task list, that competitor could then approach any local, state, or federal entity in an effort to perform a validation analysis on the applicable physical performance exam used to screen entry-level firefighters, without investing the time and money that HPS devoted to the development of the task list. *Id*. ¶ 12. Such a competitor could then undercut a bid submitted by HPS merely by discounting the time and money saved by improperly obtaining and using a copy of this confidential and proprietary business information. *Id*. Therefore, a very direct and very specific injury to HPS will occur in the even that Exhibits I, K, and L are not filed under seal.

## CONCLUSION

For the reasons set forth above, the City respectfully requests the Court to grant Plaintiffs' request to file Exhibits I, K, and L of their Motions for Class Certification under seal.

Dated: February 21, 2013

Respectfully submitted,

**THE CITY OF CHICAGO**

By: /s/ Allan T. Slagel
One of Its Attorneys

Allan T. Slagel (ARDC No. 6198470)
aslagel@shefskylaw.com
Cary E. Donham (ARDC No. 6199385)
cdonham@shefskylaw.com
Heather A. Jackson (ARDC No. 6243164)
hjackson@shefskylaw.com
Erin K. Lynch (ARDC No. 6293268)
elynch@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011